IN THE CIRCUIT COURT OF MARYLAND FOR BALTIMORE CITY

100 HARBORVIEW DRIVE                    *
CONDOMINIUM ASSOCIATION
By its                                  *
COUNCIL OF UNIT OWNERS
8701 Georgia Avenue                     *
Suite 300
Silver Spring, Maryland 20910           *

   Plaintiff                            *

   v.                                   *       Case No.: _____

CONTINENTAL CASUALTY CO.                *
333 S. Wabash Avenue
28th Floor                              *
Chicago, Illinois 60604
                                        *
Serve: Therese M. Goldsmith, Esq.
      Maryland Insurance Comr.        *
      St. Paul Plaza
      200 St. Paul Place              *
      Suite 2700
      Baltimore, MD 21202 – 2272      *
      *Statutory Agent*
                                        *
   And
                                        *
IAN H. GRAHAM INSURANCE
A division of Affinity Insurance, Inc.  *
15303 Ventura Boulevard,
12th Floor                              *
Sherman Oaks, CA 91403
                                        *
Serve: Therese M. Goldsmith, Esq.
      Maryland Insurance Comr.        *
      St. Paul Plaza
      200 St. Paul Place              *
      Suite 2700
      Baltimore, MD 21202 – 2272      *
      Statutory Agent
                                        *
   Defendants
*     *     *     *     *     *     *     *     *     *     *     *     *

## COMPLAINT

100 Harborview Drive Condominium Association by its Council of Unit Owners ("Harborview"), and by and through The Law Offices of Peter G. Angelos, James E. Garland and Zebulan P. Snyder, its attorneys hereby sues Continental Casualty Co., ("C.N.A.") and Ian H. Graham Insurance ("I.H.G.") and states further:

### The Parties

1. Harborview is an unincorporated condominium association formed in 1993, pursuant to the Maryland Condominium Act ("MCA") and pursuant to the Declaration and By-Laws entered into by the unit owners of Harborview Drive Condominium.

2. 100 Harborview Drive Condominium is a high-rise, multi-unit condominium located in Baltimore City Maryland.

3. Harborview acts thorough its Board of Directors, pursuant to its Declaration and Bylaws.

4. At all times relevant hereto Harborview contractually delegated its day to day property management operations to Zalco Realty, Incorporated ("Zalco"), an independent property management company.

5. Harborview was, at all times relevant hereto, contractually obligated to indemnify Zalco for certain of Zalco's costs and expenses. Zalco contends that its litigation defense costs and expenses arising from its management of the Harborview properties, including those relevant hereto, are included within the ambit of that indemnification obligation. Harborview has, in fact, defended and indemnified Zalco with respect to all claims at issue herein. Therefore, all claims herein relate to the defense costs and releated expenses and consequential damages of both Harborview and Zalco, arising from Defendants' improper failure to honor its duty to defend Harborview and Zalco, as set forth below..

6. Continental Casualty Company ("C.N.A.") (NAIC # 20443), at all times relevant hereto, was and is a property and casualty insurance carrier with its headquarters in the State of Illinois.

7. C.N.A. is registered to conduct, and is in fact conducting, the business insurance throughout the State of Maryland.

8. I.H.G. at all times relevant hereto, was and is an affiliate of Affinity Insurance Services, Inc., and an errors and omissions insurance carrier affiliated with C.N.A., with its headquarters in the State of California.

9. Through C.N.A., I.H.G. conducts the business of insurance, including, but not limited to community association directors and officers insurance and community property mangers' errors and omissions insurance, throughout the State of Maryland.

## Jurisdiction and Venue

10. As a Maryland registered property and casualty insurance company doing business throughout the State of Maryland, C.N.A. has consented to venue and jurisdiction in the State of Maryland.

11. As an insurance company doing business throughout the State of Maryland, I.H.G., a division of Affinity Insurance Services, Inc., has consented to venue and jurisdiction in the State of Maryland.

12. All acts relevant to the completion of the contracts of insurance at issue herein took place and/or were completed in Baltimore City, Maryland, where Harborview is physically located and where the underlying claims were filed.

13. This Court is empowered to preside over insurance coverage and defense claims in excess of Thirty Thousand Dollars ($30,000.00).

## Facts Relevant to All Claims

**A. Insurance Coverage:**

14. In or about October, 2005, Harborview, through its insurance broker, first entered into a contract conferring "Community Association" errors and omissions insurance coverage with Defendant, C.N.A. ("Policy" attached hereto as Exhibit A). The coverage was provided by C.N.A. through its affiliation with IHG, which concentrates in the provision of such coverage.

15. The Policy had a term of one year and was renewable annually.

16. The Policy was a claims-made policy.

17. Harborview continued to renew the Policy, through its insurance broker, R.C.M&D, Inc. through all times relevant hereto.

18. In or about October 2009, Harborview purchased a renewal of the Policy (Policy Number 0250960011) with a Policy Period of October 6, 2009 through June 30, 2010.

19. On or before June 30, 2010 Harborview purchased from C.N.A. and IHG an Amendment of Declarations extending the reporting period under the Policy for an additional thirty-six (36) months beyond June 30 2010 through June 30, 2013.

20. The defendants advertised that their Community Association Directors' and Officers' Liability Insurance had an "Expansive definition of Claim including (1) civil, criminal, or administrative adjudicatory proceeding; (2) a written demand for monetary damages or nonmonetary relief; or (3) an Equal Employment Opportunity Commission proceeding or any state, local or territorial equivalent."

21. The Policy contained an insuring agreement, by which C.N.A. and IHG promised to insure Harborview, as follows:

The Insurer shall pay all Loss resulting from any Claim first made against any Named Entity, Subsidiary, Insured Person or Property Manager during the Policy Period or the Extended Reporting Period, if applicable, for a Wrongful Act committed, attempted, or allegedly committed or attempted, by such Named Entity Insured before or during the Policy Period.

22. The term "Insured Persons" is defined in the Policy as:

Insured Persons means all past, present or future duly elected or appointed directors, officers, trustees, employees (including full time, part time, seasonal, temporary, leased or loaned employees), or committee members of named Entity or any Subsidiary; volunteers acting on behalf of and at the specific direction of the Named Entity or any Subsidiary; or Property Manager Employees.

23. The Policy identified Zalco as a named Additional Insured, Property Manager.

24. The Policy promised "Association Liability" coverage with a Two Million Dollar aggregate limit of liability for all losses paid on behalf of all Named Entity Insureds for all claims first made during each policy period.

25. Through the Policy, the Defendants promised and contracted to defend the Plaintiffs against "…all Liability Claims even if the allegations are groundless, false or fraudulent."

### The Clark Claims and Demands for a Defense:

26. On or about October 17, 2009 Paul Clark ("Clark") purchased at auction Penthouse 4A, a unit within Harborview, from its prior owner, Erickson Retirement Communities, LLC ("Erickson"), now known as Senior Living Retirement Communities, LLC. At the auction, the unit was sold to Clark "as is."

27. On or about January 28, 2010, after having been the recipient of a noise abatement complaint, Clark filed a housing discrimination complaint against Harborview, Zalco, and several of Harborview's officers, with the United States Department of Housing and

Urban Development ("HUD"). HUD referred this claim to the Maryland Commission on Human Relations on February 3, 2010.

28. In that filing, Mr. Clark contended that the noise abatement complaint constituted "familial status" discrimination against Clark's six year old son.

29. On August 17, 2010 the Maryland Commission on Human Relations issued a Written Finding of No Probable Cause, dismissing the Clark claim.

30. On or about June 15, 2010, Clark filed a Complaint against Harborview, Zalco and several of the Officers, Directors and agents thereof, with the Consumer Protection Division of the Office of the Attorney General of Maryland ("Consumer Protection Claim"), alleging, that Zalco and Harborview had violated the Maryland Consumer Protection Act at the time that Clark purchased the Unit. Specifically, Clark contended that a Resale Certification issued by Zalco to Clark in September 2009 failed to identify a purported mold issue as a "health code violation" in contravention of § 12-307 of the Maryland Consumer Protection Act, constituting "...an unfair and deceptive trade practice in the sale and offer of consumer realty."

31. Harborview, though its counsel, provided C.N.A. with written notice of the Consumer Protection claim on or about July 21, 2010, requesting a defense and indemnification in the Consumer Protection Claim.

32. On September 7, C.N.A., through Claims Specialist Dina Marsie-Hazen issued a denial of coverage and defense in the Consumer Protection action.

33. The Consumer Protection action was dismissed in September 2010, in part because Clark did not purchase the Penthouse 4A from Harborview, but from Erickson.

34. On October 20, 2010 Clark filed, in the Circuit Court for Baltimore City, a Complaint and Demand for Jury Trial against Zalco Realty, Inc. and Harborview ("Circuit Court Claim").

35. In the Circuit Court Claim, Clark raised factual allegations similar to those in his Consumer Protection Action, setting forth three counts: I – fraudulent misrepresentation, rescission; II - Fraudulent misrepresentation – money damages, and; III – Violation of the Maryland Consumer Protection Act.

36. Of particular relevance to the current proceeding, Clark, in paragraphs 8 through15, of his Complaint again raised the failure of Zalco and Harborview to provide Clark, at the time of the purchase of his property, a resale certificate setting forth various building envelope/ water penetration issues allegedly then and there existing. Each of the Counts of the Complaint was centered on the alleged failure of Zalco and Harborview to notify Clark of the defects in the 2009 Resale Certificate.

37. Harborview promptly and timely notified C.N.A. of the filing of the Circuit Court Claim on or about October 28, 2010.

38. On November 22, 2010, C.N.A., through Claims Specialist Dina Marsie-Hazen issued a denial of coverage and defense in the Circuit Court Claim.

39. In its denial correspondence, C.N.A. again, ignored the fact that the Clark claims center on an alleged (and subsequently repudiated) failure of Harborview and Zalco to notify Clark of alleged building deficiencies. Instead C.N.A. focused on the tangential relationship of the failure to notify claims to an "… alleged failure to perform various maintenance issues in violation of the Associations By-Laws which has caused the

plaintiff to suffer economic damages. The Complaint also presents claims for mold related damages."

40. Further, C.N.A. states: "Accordingly, as the policy does not cover any damages related to the potential health issues associated with mold exposure, this is another reason for denial of coverage."

41. However, neither the Circuit Court Claim nor the preceding Consumer Protection action was centered on maintenance or mold issues. Instead each of the counts of the Complaints was based on the alleged failure of Zalco and Harborview to provide Clark statutory and contractual notice at the time of his purchase of Penthouse 4A, allegations which clearly fall within the ambit of The Policy. Further, neither of the subject Clark Claims sought recovery for "damages related to the potential health issues associated with mold exposure," each sought, on its face, rescission and damages arising from Mr. Clark's alleged lack of knowledge of a purportedly deleterious condition at the time of his purchase of Unit 4A.

42. In properly determining the existence of its duty to defend an insured, C.N.A. is required to utilize the "nine corners" analysis: reviewing the four corners of the Complaint, the four corners of the policy, and any additional information potentially relevant to the claim *supporting* the tender of a defense. If this analysis reveals the potentiality of a covered claim, C.N.A must provide a defense to its insured. It is clear that such an analysis requires a determination that the crux of the case is "knowledge" and "notice" at the time of the Clark's purchase of Unit 4A, not mold and maintenance. *Philadelphia Indemnity Ins. Co. v Maryland Yacht Club*, 129 Md.App. 455, 742 A.2d 79 (Md. App. 1999).

43. C.N.A. has never stated that its denial of its obligation to defend and indemnify Harborview was based on any policy provision excluding coverage for damages arising from and alleged failure to notify. C.N.A. is therefore estopped from asserting such a basis for denial now.

44. As a result of Defendants' failure and refusal to tender a defense to its insureds pursuant to the terms of the Policy, Harborview was forced to mount a defense through its own resources and at rates and amounts significantly higher than those available to C.N.A. through its negotiated panel counsel defense rates.

45. The defense of the case through counsel retained and paid for by Harborview was necessary and effective, resulting in the trial court granting summary judgment in favor of Harborview and Zalco on March 19, 2012.[1]

46. Indeed upon Clark's filing of an Amended Complaint on or about November 16, 2011, containing precisely the same causes of action with some minor additional factual assertions, C.N.A. did, on June 26, 2012 (subsequent to the trial court's granting of summary judgment in favor of Harborview and Zalco), extend a defense to Harborview. That defense was retroactively commenced as of the filing of the Amended Complaint.

47. As of the date of this filing, however, despite commitments to do so, Plaintiff has not received any payment defense costs related to the subject Clark Claims, including payments of the post-Amended Complaint costs.

48. C.N.A has contended that it is responsible to reimburse Plaintiffs only at its negotiated, "wholesale" rates for legal services provided in the defense of Harborview and Zalco from March 29, 2012 through June 26 2012.

---

[1] On April 24, 2013, on appeal initiated by Mr. Clark, the Court of Special Appeals affirmed the trial court's granting of summary judgment in favor of Harborview and Zalco. (*Clark v Zalco Realty, Inc. et al.*, No. 0277, September Term 2012, Court of Special Appeals, Unreported Op., issued April 24, 2012)

49. However, as result of Defendants' prior refusal to defend Harborview and Zalco, the Plaintiffs were forced to retain counsel at "retail" rates and were not able to utilize the insurers' bargaining power, as anticipated under the contract of insurance.

50. Harborview on its own behalf and on behalf of Zalco, incurred significant fees and expenses that C.N.A. was contractually required to have paid, *ab initio*.[2]

51. Given C.N.A.'s unreasonable and tortured analysis of its Community Association Errors and Omissions Policy, almost any claim under the subject Directors and Officers errors and omissions policy could be deemed to have been "related to maintenance" and therefore, not covered.

52. Maryland law and the Policy require that an insurer has a duty to tender a defense to an insured whenever a review of the "nine corners" indicates the potentiality of a covered claim. *Philadelphia Indemnity Ins. Co. v Maryland Yacht Club, Supra*

53. Further, as a foreseeable consequence of Defendants failure and refusal to tender a defense to its insureds pursuant to the terms of the Policy, Harborview, incurred interest costs, lost the value of its payments to counsel, was forced to retain insurance consultants and independent counsel, and was otherwise damaged and forced to incur expenses in order to secure reimbursement for its defense pursuant to the terms of the Policy. Harborview is entitled to the recovery of these costs and expenses under Maryland law.

---

[2] It is also noted that, by the time C.N.A. finally tendered a defense to Harborview, the Court of Appeals had issued its revised opinion in the similar case of *MRA Property Management, Inc. v. Armstrong*, 426 Md. 83 (April 30, 2012), reducing the risk of significant expense to C.N.A. and reducing the likelihood of an adverse finding on appeal in the Circuit Court litigation.

## Count I
### (Breach of Contact)

54. Harborview restates and re-alleges the facts and allegations set forth in the preceding paragraphs and states:

55. That the Policy (attached) constitutes a contract of insurance in effect between Harborview and C.N.A. at all times relevant hereto.

56. That Harborview paid all required premiums in consideration for the insurance coverage and defense promised by C.N.A..

57. That Harborview, when served with the Consumer Protection Claim, timely notified Defendant of the pendency of the Subject Claim and provided Defendant with a copy of that Claim, together with other matters, outside of the four corners of that Claim, relevant to the Defendant providing a defense to the Plaintiff in the Consumer Protection Claim.

58. That Plaintiff, when served with the Circuit Court Claim, timely notified Defendant of the pendency of that Claim and provided Defendant with a copy of the Subject Claim, together with other matters, outside of the four corners of claim, relevant to the Defendant providing a defense to the Plaintiff in the Circuit Court Claim.

59. Despite timely and appropriate notice thereof, C.N.A. unreasonably failed and refused to defend Plaintiff in the Consumer Protection Claim and the Circuit Court Claim.

60. A reasonable and good faith reading of the "nine corners" of the Complaint, the insurance contract and other evidence establish that C.N.A. had a contractual duty to defend and indemnify Harborview at C.N.A.'s first notice of the Subject Claims and at all relevant times thereafter.

61. As a result of the Defendants' multiple breaches of their respective contractual obligations to Plaintiff, Harborview incurred significant costs and expenses, including,

but not limited to: attorneys' fees and defense costs for the defense of the underlying action; reasonable insurance consultant costs; attorneys' fees and defense costs incurred in indemnifying the defense of C.N.A. insured, Zalco and the costs of pursuing this action and other costs interest, re and post judgment.

62. Because Defendants were timely notified of the pendency of this action and provided an opportunity to defend Harborview, and thereby take control of the defense of the case, pursuant to the terms of the applicable policy of insurance, defendants are estopped from seeking to improperly reduce the scope and costs of that defense.

WHEREFORE:     Plaintiff, 100 Harborview Drive Condominium Council of Unit Owners, demands judgment be entered against Defendant Continental Casualty Company ("C.N.A."), for its breach of its contractual obligations to the plaintiff for an amount in excess of Seventy Thousand Dollars ($70,000), including, but not limited to defense costs, costs incurred in recovering its defense costs, including counsel fees, consultant fees, litigation expenses and pre and post judgment interest.

LAW OFFICES OF PETER G. ANGELOS

By: _James E. Garland_
    James E. Garland
    jgarland@lawpga.com

By: _Zebulan P. Snyder_
    Zebulan P. Snyder
    zsnyder@lawpga.com
    One Charles Center
    100 North Charles Street
    Baltimore, Maryland 21201
    410-821-1000
    410-649-2112 (fax)

12